**RALPH KNIGHT, Inc., v. MANTEL.**
No. 12478.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1943.

W. Raleigh Gough, of Kansas City, Mo. (Chet D. Vance, of Kansas City, Mo., on the brief), for appellant.

Harry A. Hall, of Kansas City, Mo. (Paul T. White and David H. Bresler, both of Kansas City, Mo., on the brief), for appellee.

Irving J. Levy, Acting Sol. and Bessie Margolin, Asst. Sol., both of Washington, D. C., Kenneth P. Montgomery, Regional Atty., of Kansas City, Mo., and Morton Liftin and H. Michele Olsson, both of Washington, D. C., Attys., for Administrator of Wage and Hour Division, United States Department of Labor, amicus curiae.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a judgment for overtime and counsel fees under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219. In addition to briefs filed by the parties, the Administrator filed a brief amicus curiae which was answered by appellant.

The broad issue is whether appellee was an "executive" and, as such, exempt from the Act under section 13(a) (1) thereof. The particular issues are as to the validity of one of the elements in the definition of "executive" in the amended Regulations (Part 541.1. 5 F.R. 4077) and as to the sufficiency of the evidence to justify a finding as to that element. There are six elements in this definition.[1] The trial court found appellee came within all of these except "(F)" and, because of the failure to meet this element, the exemption was denied and appellee held entitled to recover.

### Sufficiency of Evidence.

This issue is based upon two contentions: (1) That appellee did not devote 20 per cent of his time to nonexempt work; and (2) that he was under no duty to his employer (appellant) to devote any such period of his time to nonexempt work. Appellee urges that the second contention is not open because not an issue in the trial court. This position is well taken. However, if it were not, we would have no difficulty in determining from the evidence that there is no basis for the contention.

As to the first contention—that the finding of the court that 20% of appellee's work was of nonexempt character—we think this must be ruled against appellant.

---

[1] The entire definition is as follows:

"Section 541.1.—Executive.

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee—

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and,

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

The business of appellant was a city sales agency for certain makes of automobiles. This business was conducted at one location. Included therein was a service department which repaired, oiled, greased, washed, and added accessories to cars of its customers. Appellee was the head, or "service manager", of this department. As such, he had a variety of duties, namely, meeting customers who desired service, diagnosing car troubles and taking orders for service, inspecting newly delivered cars for injuries and as to condition, placing and moving cars in the salesroom, testing demonstrator cars used by salesmen, inspecting transport vehicles delivering new cars and seeing that they were serviced. He did little actual servicing of cars. His duties, generally, being more in the nature of inspection and ascertaining what servicing was required and in stating his conclusions in written orders or directions which were passed on to others for execution. It seems to have been his exclusive duty to inspect newly arrived cars and transports and there is no evidence that others did this except there was evidence that he was assisted in engine inspection of newly arrived cars. As to all other duties, the situation was that he attended to them unless otherwise engaged. When he was so engaged, other employees—nonexempt—would, as a duty, perform them unless a customer called for appellee's services. These other employees were mechanics who were able to and did do the above work. In the placing and moving of cars in the salesroom, his work was the same physical work as the porter. Such being the character of his duties and the conditions of their performance, it was not possible to do more than roughly estimate the percentage of time when he was doing the same work as nonexempt employees or when they were doing his work—which it was their duty to do. Appellee endeavored to make these estimates by testifying to the hours of his time devoted to several of his principal duties and to the proportion of such duties performed, respectively, by him and by others. Taking the entire evidence, we are unable to say that this finding of the court was "clearly erroneous" (Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c). This contention must be denied.

### Regulation 541.1(F).

The portion of the Regulation involved is: "(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

It will be observed that this quotation involves two matters: (1) a requirement that nonexempt labor shall not exceed 20% of the hours worked in the workweek; and (2) a proviso removing this requirement where the employee is "in sole charge of an independent establishment or a physically separated branch establishment." Appellant challenges as to each of these matters. As to the first, it contends that the Administrator "has laid down an arbitrary classification having no bearing upon or relation to the real character of the employment from the qualitative point of view, especially in a case where such nonexempt work is not performed unless in emergencies or due to particular exigencies of the business." As to the second, it contends that: "in denying exemption to an executive employee because of such arbitrary percentage rule, due to the mere fact that the employee's department is not physically separated from the main establishment of the employer, the Administrator has laid down an arbitrary test and requirement which is out of keeping with the intent of Congress and the purposes for the enactment of the Act, and therefore results in executive legislation." Appellant relies principally upon the contention involving the proviso.

*The 20% Provision.* While appellant definitely challenges in its main brief, this provision of the Regulation, it states, in its reply brief to that of the Administrator that: "Strictly speaking, we do not contend that the 20 per cent provision is *necessarily* invalid", if it were confined to situations where the employee was of a "mixed type" whose duties included both executive and non-executive—such as "working foremen and working supervisors"; but that when the "same percentage rule is to be applied to a more 'ambiguous' situation—to a case where, as here, the claimed non-exempt work consists of waiting on customers, etc. (work that is different from the main routine work done by the subordinate employees, i.e., the actual making of repairs, etc.) and it appears that the so-called non-

exempt work was necessary because of the 'exigencies' of the business or its peculiar nature (such as customers wanting to see the 'head man,' etc.)—a strict and literal application of the 'percentage rule' may lead to an apparent injustice and perversion of the real purpose and spirit of the Act."

The Act expressly authorized the Administrator to define and delimit the term "bona fide executive" employee (Sec. 13(a) (1)). Such definition must be consistent with the statute and reasonable (Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528), but the burden is upon those who attack an administrative regulation (when power to make regulations is given by Congress) to make its invalidity so manifest that the court has no choice except to hold the regulation inappropriate to the end specified in the Act of Congress. Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 44 L.Ed. 846.

This is a remedial Act (United States v. Darby, 312 U.S. 100, 114, 115, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56) and must be liberally construed to effectuate its purposes (Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56). Obviously, this same liberality of construction must be extended to Regulations promulgated to effectuate the Act or its purposes would not be promoted thereby. The purposes of the Act are expressly declared (29 U.S. C.A. § 202). Also, "We must assume that all employees in interstate commerce, so far as reasonably possible, should be made subject to the provisions of the Act" (Fleming v. Hawkeye Pearl Button Co., supra, 113 F.2d page 56); "exemptions would tend to defeat its purpose" (same) and "exemptions should be construed strictly" (same).

When the Administrator approached the task of defining "bona fide executive" employees, he faced that duty having in mind the liberal purposes of the Act and that executives were exempt. It was his duty to make such definition fairly and to restrict it to such as were truly executives and not employees. The term executive employee has a general popular and accepted significance which differentiates it from ordinary employees. It carries the ideas of supervision of or control over or direction of ordinary employees (see Ar-

kansas Amusement Corp. v. Kempner, 8 Cir., 57 F.2d 466, 473). Those distinctive attributes are not difficult to state and often not difficult to apply. However, executives graduate all the way from those who are clearly and exclusively such down to those employees whose duties combine some control or supervision or direction with participation in the work of ordinary employees. This latter class have attributes both of executives and of ordinary employees. It is in this twilight zone of uncertainty that difficulty arises in definition and in application of definition. Portion (F) of the definition here is the attempt by the Administrator to formulate a guide to differentiate between "bona fide executives" and non-exempt employees where the duties of the employee in question are of this mixed character.

As originally promulgated in October, 1938, this portion of the definition read "who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer." Having in mind the remedial character and purposes of the Act and that exemptions therefrom should be strictly construed, there is no question that an employee who does a "substantial amount" of the same kind of work as nonexempt employees should not be regarded as a "bona fide executive" within the meaning of the Act. This earlier definition was clearly within the Act.

The practical application of this and other definitions developed difficulties and differences concerning the proper interpretation of the definitions. Controversies as to the definitions focused on sections 541.1 (executives), 541.2 (professional) and 541.4 (outside salesmen)—all being exempted classes—and numerous applications for amendments were filed. This situation resulted in extended hearings whereat there were 165 appearances on behalf of employer and employee groups and others.

Much of the criticism of the definition of section 541.1 (executives) was directed at the phrase "who does no *substantial amount* of work of the same nature as that performed by nonexempt employees of the employer" [italics added]. Strenuous objection was made that this expression was "vague and ambiguous" and had "led to conflicting results in the actual administration and enforcement of the Act." It was recognized that the phrase had proved

difficult of administration. It was for the purpose of removing or of diminishing these difficulties that the percentage basis was substituted for the objectionable phrase.[2]

▇▇▇ The selection of a percentage guide is not, in and of its nature, objectionable. Whatever percentage might have been selected would, obviously, have been somewhat arbitrary in the sense that, possibly or probably, some other percentage might have been selected and have been equally unobjectionable. However, to be arbitrary in a legal sense so as to render it invalid, the particular percentage selected must be unreasonable (Manhattan Gen. Equipment Co. v. Commissioner, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528) for the purpose for which it is to be used. It can hardly be held that it is unreasonable, for the purposes of this Act, to classify an employee as not being a bona fide executive when a fifth of his work is that of ordinary nonexempt employees of the same employer. Commendably, appellant admits this to be true as a general proposition. However, it argues that this measure is not fair when applied to such a case as this where the claimed nonexempt work of the employee is different from the main

---

[2] The report and recommendations on these hearings states, as to this matter, the following:

"The first point to be considered is the alleged ambiguity of the phrase 'who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer.' It is undoubtedly true that this phrase has proved difficult of administration. Many proposals were received, not unnaturally, to drop the phrase entirely, but upon closer scrutiny, the proponents usually admitted that deletion of the phrase would not solve the problem. It was freely admitted that an employee who is an executive 1 hour a week should not qualify for the exemption. The deletion of this phrase would then throw the same problem of interpretation on the words 'primary duty,' found earlier in the definition. 'Primary duty' would then become subject to the same controversy that has already arisen over 'substantial amount of work.'

"Fixed Percentage Suggested ·

"As an alternative to deletion, it was suggested that the phrase be defined in terms of fixed percentage. There is little doubt that any percentage that might be taken as an arithmetical equivalent of the word 'substantial' must be somewhat arbitrary in nature and will cause some hardship. It will exclude certain employees from the exemption who probably might well be permitted exemption. On the other hand, it will permit the exemption of certain employees who probably should be entitled to the benefits of the Act. Nevertheless, even if full weight is given to the difficulties that inhere in the choice of a quantitive measurement, this remains the most practical solution of a difficult problem.

"Many persons who agreed that a percentage requirement was proper differed on the actual percentage that should be used. In a number of instances proponents of a clarification of this clause indicated that the amount of nonexempt work allowable was not in itself of major consequence. Their primary interest was in obtaining a sufficiently definite rule so that they could adjust their practices accordingly. There are, of course, any number of ways in which the word 'substantial' might be translated into numerical terms. A number of employers and employer representatives suggested that 'substantial' should be considered over 50 percent. However, a number of employers agreed that this was an unduly large allowance for a person who is considered as employed in a 'bona fide executive capacity.' Among other proposals was one that 'substantial' should be interpreted to mean not more than 20 percent. The recognition of the fairness of this by quite a few employer groups would seem to be an adequate assurance that it will not work hardship on employers. Equally, since there was no uniform objection to this amount by the unions, it may be taken as not unfair to employees. Furthermore, in the recent past the Wage and Hour Division in answering inquiries on the subject has stated that it would not consider 10 percent as in violation of the 'substantial' requirement, whereas it would consider work in excess of 20 percent as a violation of that requirement.

"It is felt that this reply has, if not generally, at least frequently proved satisfactory. Although this implies 15 percent rather than 20 percent, the evidence adduced at the hearings indicates the desirability of a slightly greater allowance. The 20 percent allowance will be entirely adequate for such common situations as the bank cashier who acts as relief for a nonexempt employee one hour a day, or the radio station executive who performs one eight-hour shift of nonexempt work each week."

routine work done by the nonexempt employees and was done by nonexempt employees because of exigencies of the business or its peculiar nature. Whether the work was different from the routine or was done only to meet exigencies or was peculiar in its nature, such work was required by the employer to be done by nonexempt employees when occasions arose and there is no claim that they were not paid for the time so spent at their regular wages as nonexempt employees. Furthermore, this work was of kinds so closely related to that done by the nonexempt employees—they could and did do it—that it cannot be said that it was purely and exclusively executive in character and that such employees were, for the time being, engaged in bona fide executive work.

*The Proviso.* The contention as to the proviso is that: "in denying exemption to an executive employee because of such arbitrary percentage rule, due to the mere fact that the employee's department is not physically separated from the main establishment of the employer, the Administrator has laid down an arbitrary test and requirement which is out of keeping with the intent of Congress and the purposes for the enactment of the Act, and therefore results in executive legislation."

The Administrator recognized that the percentage measure would "cause some hardship" and adopted it only because it seemed "the most practical solution of a difficult problem" (see footnote 2). The reasons for the proviso are stated in the report and recommendations as follows:

"The one situation where it seems unwise to apply even the liberal 20-percent rule is that of the employee in sole charge of an independent establishment or a physically separated branch establishment. Clearly, if such an employee does have at least two other employees to supervise and is not himself supervised at the location where he works, he possesses a degree of executive freedom that would not be the case if he had a job of comparable importance in charge of a department inside a plant. Due weight must be given to this freedom from direct supervision enjoyed by the top person in an independent establishment or in a branch establishment physically separated from the supervising office of the company. For that reason it is recommended that there be no limitation on the amount of nonexempt work performed by such employees. It is felt that the occasional exigencies of business, particularly in small branch establishments where the flow of work may be very great at times in comparison with the size of the regular labor force, make such leeway desirable and will not tend to defeat the purposes of the act. Moreover, there is an adequate safeguard against abuse in the fact that only one person in any establishment can be classed as an 'executive' by the application of this proviso. Among those who will be exempt under such a provision, many of whom, at present, are probably not exempt or whose exemption is doubtful, are managers of branch warehouses, managers of branch trucking depots, local managers of branch offices of utility companies, cashiers of small banks and others.

"It should be noted that the justification for discarding the limitation on nonexempt work in this situation is the comparatively high degree of freedom from supervision and the consequent weight of the executive responsibility involved. It follows that such exemption is and should be available only to a person who does have executive responsibilities and who is actually engaged in supervising the work of others. In no instance should this be construed as applying to a person who does not have at least two other employees under his permanent supervision.

"It should also be noted that the term 'independent establishment' must be given full weight. The establishment must have a fixed location and must be geographically separated from other company property. The management of operations within one among several buildings located on a single or adjoining tracts of company property does not qualify for the exemption under this heading. In the case of a branch, there must be a true and complete physical separation from the main office."

■ From this quotation it appears that the exclusions in the proviso are narrowly limited; that there is little chance for evasion of the Act thereby; and that the reasons for such exclusions are plausible and, apparently, based upon practical situations and considerations.

### Conclusion.

The contentions presented and urged, with commendable clarity and ability by appellant, must be denied. The judgment of the trial court is affirmed.