## SNYDER v. WESSNER.

Civ. 1069.

District Court, D. Minnesota, Fourth Division.

June 29, 1944.

972

Stanley V. Shanedling, of Minneapolis, Minn., for plaintiff.

Howard P. Quealy and Kelly & Mangan, all of Minneapolis; Minn., for defendant.

JOYCE, District Judge.

This is an action for overtime pay alleged to be due under the Fair Labor Standards Act of 1938, 52 Stat. 1060–1069, 29 U.S.C.A. §§ 201–219, and an additional amount as liquidated damages together with reasonable attorney's fees as provided in Section 16(b) of the Act, 29 U.S.C.A. § 216(b).

Defendant is engaged · in the tailoring business, making men's suits and overcoats and both men's and women's uniforms to measure. The business is both wholesale and retail and is interstate in character. Plaintiff handled substantially all the coats that were manufactured and was concededly engaged in interstate commerce within the meaning of the Act. There are about forty employees. The entire factory is located in one large room but the manufacturing operations are divided into departments; e. g. the coat department, vest department, pants department, and cutting department, which operate more or less independently of each other. We are concerned here only with the coat department.

Plaintiff is a tailor and was employed by. defendant in 1938 as a sleeve, collar, and shoulder "baster" in the coat department. He was paid on a piece-work basis and his earnings fluctuated as the business is seasonal in nature. On January 13, 1941, he became foreman of the coat department at an agreed salary of $50 a week. This amount was later increased to $55 and finally to $60. With this salary guarantee was coupled an arrangement whereby he received a bonus dependent upon the number of coats produced in the department in a week. Thus, during busy seasons especially, plaintiff's earnings exceeded his guaranteed salary, reaching a high. of $78.25 for the week ending May 9, 1942. Plaintiff continued in his capacity as foreman until he left defendant's employ April 24, 1943. It is for this period that overtime compensation is sought. Defendant contends that as foreman plaintiff was an executive employee and therefore exempt from the provisions of the Fair Labor Standards Act.

There are between fifteen and eighteen employees in the coat department. It operates on what has been referred to as a "chain" operation; that is, on each garment a certain sequence of operations is necessary and each employee has his particular operation to perform. The garment moves

from one employee's table or machine to the next until it is completed at the end of the "chain". Most of the employees work on a piece-work basis; that is, they are paid only for the work actually done. As a coat comes into the department a ticket is attached to it showing the operations to be performed on it. As each operation is completed, the operator removes the perforated section of the ticket for his particular operation. This shows that he has done the work and is the basis of his compensation. Other employees work on a straight hourly basis all or part of the time. Plaintiff was the only coat department employee on a salary. It also appears that there are many operations in the coat department for which there were no piece-work tickets and which were always compensated for on an hourly basis. An example of these is "marking try-ons", that is, marking the coat with chalk after it had been tried on the customer, and "busheling", or making ordinary tailoring operations. It is the nature of plaintiff's duties as foreman of this department that is the kernel of this dispute.

1. Section 13(a) of the Act, 29 U.S.C.A. § 213(a), provides in part: "The provisions of sections 206 and 207 of this title [pertaining to minimum wages and maximum hours] shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); * * *."

The pertinent regulations promulgated pursuant to the above section provide:

"Section 541.1—Executive.

"The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee—

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities, and

"(F) whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20 per cent of the number of hours worked in the work-week by the non-exempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment." (Title 29 Code of Federal Regulations, 1940 Supp., Ch. 5, Section 541.1)

It has been said of these regulations that they "have the force of law as much as though they were written in the statute." Helliwell v. Haberman, 2 Cir., 140 F.2d 833, 834. And: "they must be regarded not as setting up criteria which should be given consideration in determining whether an employee falls within the exempted employments, but as defining and delimiting such phrases and as setting up *absolute criteria* through which the question of exemption must be determined." (Italics supplied.) Walling v. Yeakley, 10 Cir., 140 F.2d 830, 832.

Exemptions from the Act are to be strictly construed and one claiming their benefit must bring his case within both their letter and spirit. Schmidtke v. Conesa, 1 Cir., 141 F.2d 634; Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283. This is particularly true when the exemption claimed is for an employee engaged in interstate commerce. Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514.

The regulations above quoted prescribe six conditions, in the conjunctive, which must all be fulfilled before an employer can claim an exemption on the ground that his employee is an executive. Helliwell v. Haberman, supra. We need here be concerned only with that part of Section 541.1 (F) that provides: "whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 per cent of the number of hours

worked in the work week by the nonexempt employees under his direction."

The validity of this subsection of the regulations is upheld and the reasons leading to its adoption are discussed in Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514. There is some uncertainty as to what is meant by "number of hours worked in the work week by the nonexempt employees" as a base to be used in calculating the 20 per cent. In George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, it is suggested that what is meant is the actual number of hours worked by individual employees in a particular work week. But such exactitude does not seem to be required. The previous regulation (which 541.1 (F) supplanted) read: "who does no substantial amount of work of the same nature as that performed by nonexempt employees". The vagueness of this language apparently caused uncertainty and, after holding hearings, the administrator promulgated the present regulation. It appears that the 20 per cent rule was an attempt to restate and clarify the term "substantial amount." Ralph Knight, Inc., v. Mantel, supra. See The Report and Recommendations of the Presiding Officer at Hearing Preliminary to Redefinition, October 24, 1940. Thus, the standard work week of the nonexempt employee is the base to be used in calculating the 20 per cent. If that is approximately forty hours, an "executive" can work up to eight hours per week, but no longer, at nonexempt work without losing his exemption. If the standard work week is thirty or fifty hours, the allowance would be six and ten hours respectively. See Report and Recommendations, supra.

In the case at bar the normal standard work week was forty hours. Each year there were two busy seasons, approximately from March 15 to July 4, and from September 1 to January 1. For these periods I find the standard work week, for exemption purposes, to have been 44 hours. Applying the percentage rule strictly and as an "absolute criterion", the determinative fact is whether plaintiff, after he became foreman, did nonexempt work more than eight hours a week during the normal season or more than 8.8 hours during the busy seasons.

Plaintiff testified that after becoming foreman he continued to do tailoring work as he had before with the added duties of opening the shop in the morning and staying until the last employee had left. In the morning he would "line up" the work so that the other employees would have enough to do. He testified that this would take not longer than fifteen to twenty minutes a day, and often work was left over from the previous day. If one of the operators got behind with his work, plaintiff would "pitch in" and help as otherwise the next operator in the "chain" would soon be out of work. Plaintiff also testified that most of the operators were skilled and needed little supervision during the day. The "chain" system had been used long before he became foreman and was semi-automatic. Often, when an operator was finished he would throw the coat onto the table of the next operator, but when it was necessary to take it to the far end of the room, as to the presser, plaintiff would carry it. Defendant introduced some testimony that plaintiff spent considerable time transporting coats from one part of the room to another. If so, I cannot conceive that such work should be regarded as exempt because of a supervisory nature. Any one could have done it. Naturally, piece workers would not care to leave their tables to carry the coats because they were paid only for the operations that they performed.

Plaintiff also testified that most of the day he spent at his table sewing, basting collars, shoulders and sleeves and sewing linings; that he did other tailoring work such as marking coats and making alterations. This type of work is the same as that done by other employees and is obviously not exempt.

It is not denied that he had supervisory duties. He inspected coats, saw that the operators had work to do, interviewed prospective employees for the department, sometimes gave instructions to new employees, kept track of the time that non piece-workers worked, determined which coats should be completed first, etc. Plaintiff estimated that out of an eight hour day not more than two or three hours were required for his supervisory duties and that the rest of the time he was a production worker. A number of employees and former employees testified as to plaintiff's activities during the period he was foreman. That he did do nonexempt work is corroborated by many of them. There is no direct testimony to the contrary.

The burden of proving the exemption is on the defendant. Helliwell v.

Haberman, 2 Cir., 140 F.2d 833; Brown v. Minngas Co., D.C., 51 F.Supp. 363. Defendant concedes this, but contends that as the regulation requires him to prove a negative, that is, that plaintiff did not work more than the prescribed percentage of hours, that slight proof is required to establish a prima facie case and shift the burden of going forward with the evidence to plaintiff, citing United States v. Denver & R. G. R. Co., 191 U.S. 84, 24 S.Ct. 33, 48 L.Ed. 106. This is undoubtedly the rule when the means of disproving the negative are in the possession of the opposite party, but, "When a negative is averred in a pleading, or plaintiff's case depends upon the establishment of a negative, and the means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative." United States v. Denver & R. G. R. Co., 191 U.S. 84, 92, 24 S.Ct. 33, 35, 48 L.Ed. 106.

■ The defendant employer here had ample means of ascertaining the nature of his employee's work. He must have known that plaintiff was doing nonexempt work. If he intended to claim that plaintiff was exempt as an executive, as he evidently did since he told him to stop punching the time clock shortly after he became foreman, it was incumbent upon the employer to ascertain whether the amount of nonexempt work exceeded the prescribed percentage. An employer must determine at his peril which of his employees are within the coverage of the Act and which are not. George Lawley & Son v. South, 1 Cir., 140 F.2d 439.

■ I find that defendant has not sustained his burden of proof and that plaintiff's nonexempt work exceeded the 20 per cent limitation and the exemption does not apply to him. It is therefore unnecessary to discuss whether he meets the other tests of an "executive" as prescribed in the regulations.

■ 2. Plaintiff claims that when he took the foreman's job it was with the understanding that he was to work a forty-four hour week, according to conversations that he had with defendant. Defendant denies this. He asserts that there was no conversation about hours but only about salary and the job that was to be done. There were no witnesses to these conversations and the employment contract was not reduced to writing. Plaintiff was to be in the department whenever it was working and also on Saturday mornings. At the time of these conversations plaintiff had been working in the coat department for over two years. He must have been aware that the hours worked by that department varied widely between the busy and slack seasons. That production rather than hours was in the minds of both plaintiff and defendant is shown by the fact that they entered into a bonus agreement, dependent upon production, along with the salary agreement. Furthermore, by plaintiff's own testimony, from the beginning he made no effort to confine his hours to forty-four per week. I find that there was no agreement that plaintiff was to work a definite number of hours each week.

■ The method of computing overtime pay in a case where there is a fixed weekly wage and the work week is of a variable and indefinite duration is well settled. The "regular rate at which the employee is employed", in the statutory sense, is the quotient of the weekly wage divided by the number of hours worked in that week. This is the rate for the first forty hours. The overtime rate is, of course, one and one-half times the regular rate. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, affirmed 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83. The following formula is used in computing plaintiff's damages:

(1) $\dfrac{\text{Weekly Wages Received}}{\text{Hours worked}}$ = Regular rate per hour

(2) Regular rate $\times$ 40 = Amount due for regular time

(3) Regular rate $\times$ 1½ = Overtime rate

(4) Overtime rate $\times$ the difference between hours worked and 40 = Amount due for overtime

(5) Amount due for regular time (2) plus amount due for overtime (4) = Wages due under the Fair Labor Standards Act.

(6) Amount due under the Act (5) minus the amount actually received = Amount employee was underpaid.

(7) Double the amount of underpayment (6) equals the amount due under Section 16(b) of the Act.

See Brown v. Minngas Co., D.C., 51 F.Supp. 363, 372.

■ There is no dispute as to the amount of plaintiff's weekly earnings but it is necessary to determine the number of hours that plaintiff worked in each of the work weeks for which he claims compensation. The burden is upon plaintiff to estab-

lish these facts and the evidence to sustain this burden must be definite and certain. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115. Neither plaintiff nor defendant kept a record of these hours. For several weeks after he became foreman, plaintiff continued to punch the time clock. Then defendant told him that that would no longer be necessary as he was an exempt employee under the Act. Plaintiff relied on this statement and no further record of his time was kept. Plaintiff testified from memory as to the latest time he arrived in the morning and the earliest time he left in the evening for the various slack and busy seasons. Time cards for the other employees in the coat department from the week ending May 17, 1941, are in evidence. The cards for the period previous to this date, including plaintiff's for the few weeks that he punched the clock, are not in existence. However, the payroll records for this period are in evidence. These records disclose the number of hours worked in each week by the other employees of the coat department. Counsel on both sides have shown commendable diligence in reducing this voluminous data to tabulation form as an aid to the court.

Plaintiff claims that he arrived from one-half hour to an hour before the other employees, opened the shop, and started work. There is considerable evidence to impeach this testimony; two witnesses testified to occasions when they regularly opened up and several testified to occasions when plaintiff arrived at the same time or later than they did. There is also evidence that plaintiff did not start work as soon as he arrived. However, it does appear that plaintiff, with few exceptions, was at work when the coat department was operating and also on some Saturdays that it was not. Taking into consideration the whole evidence with particular reference to what it shows as to the number of hours worked by other employees in the department, the number of hours the coat department was open, and with some allowance for those Saturdays when the coat department was not operating, I have made a separate finding as to the number of hours plaintiff worked in each of the 119 work weeks here involved. I have also made a finding as to the amount of plaintiff's earnings in each of these weeks. These figures are incorporated in a separate schedule which is attached to and made a part of this memorandum. Applying the formula recited above, I have made a computation as to the "regular rate" and overtime rate for each of the work weeks computed to the tenth of a cent per hour, and the resulting amount that plaintiff should have received for each week. The difference between this figure and what he actually received is shown in the last column and is the amount due him for each week. The total due for the weeks that I have found he was entitled to overtime pay is $653.52. He is also entitled to liquidated damages in a like amount.

Plaintiff's counsel testified as to the amount of time and work expended in the preparation of his case. He testified that he spent some eighteen working days checking defendant's invoices and preparing exhibits demonstrating the interstate character of defendant's business. That is conceded in the briefs but in view of the pleadings it cannot be said that this work was unnecessary. Plaintiff is allowed an attorney's fee of $400.

Attached to the opinion is a schedule of amounts found due plaintiff from the week ending 1-8-41 through 4-24-43 (except no overtime is allowed for the weeks ending 2-1-41, 2-15-41, 2-22-41, 7-5-41, 8-9-41, 1-3-42, 8-22-42, 9-12-42, 1-2-43 and 1-9-43) which totaled $653.52.