McCLOSKEY & CO. v. DICKINSON.
DICKINSON v. McCLOSKEY & CO.

Nos. 551, 552.

Municipal Court of Appeals for the
District of Columbia.

Dec. 19, 1947.

Rehearing Denied Jan. 10, 1948.

Harry L. Horton, of Washington, D. C., for McCloskey & Co.

Albert F. Beasley, of Washington, D. C., for Dickinson.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

These are cross-appeals from a judgment in an employee's suit for overtime pay, liquidated damages and attorney's fees, brought under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. Section 201 et seq.

The employee, Dickinson, went to work for McCloskey & Company at a shipyard in Florida on August 23, 1942 and worked for that company until February 1945. His classification was that of designer or mechanical engineer and for some eight months he was paid at the rate of $480 per month. With very few exceptions, he worked forty-eight hours every week.

On April 26, 1943 he was called in and told that for the convenience of the payroll department his rate of pay would be changed to $2.14 per hour. When he objected to the change and wanted to resign he was reminded that he could not resign because, being a defense worker, he was "frozen" in the job. He was assured that the change would not make any difference to him and that he would continue to receive the same amount of money. He signed the "change of rate" slip and worked under the new arrangement until July 10, 1944. He was then returned to his original pay basis of $480 per month, and on that basis he remained until he left the company on February 28, 1945. In the latter part of 1944 he made claim for overtime pay. He repeated the claim verbally several times before he left the job, and each time he was told the matter had not been settled. Before he left he put his claim in writing, and after leaving he wrote several more letters to the defendant company. We shall discuss its replies later. Finally on February 11, 1946, in response to his inquiry, he was informed by letter from the Wage and Hour Division of the Department of Labor that, despite the approval of that Division, his claim had been disallowed by representatives of the McCloskey Company, and of the U. S. Maritime Commission for whom the company had been working during the period of plaintiff's employment.

About four months later plaintiff brought this action, claiming that under the Fair Labor Standards Act, Section 7, 29 U.S.C.A. § 207, he was entitled to overtime pay at the rate of one and one-half times his regular pay for all hours worked in excess of forty hours in each work-week. He also claimed an additional equal amount as liquidated damages, and an attorney's fee, both authorized by the Act. Defendant answered, resisting plaintiff's claim on the grounds (1) that plaintiff had been employed in an administrative capacity and was therefore entitled to no overtime because of the exemption provisions of the Act, Section 13, 29 U.S.C.A. § 213, (2) that under D.C.Code 1940, 12-201, so much of plaintiff's claim as related to wages earned more than three years before the filing of the suit was barred by limitations, and (3) that plaintiff had on April 26, 1943 agreed to the change of rate above referred to.

The trial court ruled against defendant on the plea of limitations and also on the merits of plaintiff's claim, and decided that plaintiff was entitled to overtime pay from August 23, 1942 to April 25, 1943, inclusive, and from July 10, 1944 to February 28, 1945, inclusive (these being the two per-

iods when plaintiff had been paid on a straight monthly basis of $480). This overtime, according to the finding, amounted to $610.08. In accordance with the provisions of the Act the judge doubled that amount, awarding plaintiff $1,220.16; and also allowed him an attorney's fee of $300. From so much of the judgment defendant has appealed.

The judge awarded plaintiff nothing for the period during which he had worked at the hourly rate. From that part of the judgment plaintiff has filed a cross-appeal. We shall first consider the appeal of McCloskey & Company.

### 1. The Plea of Limitations.

As we have seen, defendant contended that by reason of our statute of limitations plaintiff could not recover for any part of the claim which was more than three years old. Plaintiff charged that defendant had by its conduct estopped itself to plead the statute. To support his position he offered testimony that before leaving defendant's employ he had demanded his overtime pay, once in writing and several times verbally and was always told that the matter had not been settled. After leaving the service of the company he renewed his demands through the medium of several letters. Three letters which the company sent in reply are of vital importance. The first letter, written August 17, 1945, recited that plaintiff's claim, together with a number of others, had been turned over to the Wage and Hour Division whose representative had forwarded his findings to the main office at Atlanta for final decision, with the understanding that such findings were to be submitted to the Maritime Commission at New Orleans, Louisiana. The letter continued "upon approval of the Maritime Commission and their direction to pay, checks will be issued by this company," and assured plaintiff that the delay was due to no fault of defendant. The next letter, written on October 15, 1945, told plaintiff that all claims had been finally settled by the Wage and Hour Division and a report made to the Maritime Commission; that

the company was awaiting their approval "so that payments can be made." The writer of the letter added that so far as he knew the Wage and Hour Division had approved additional compensation for plaintiff, but that payments would be made on approval of the Maritime Commission, and not on the findings of the Wage and Hour Division. The letter concluded by saying: "I will also advise you on the final outcome of your overtime claim with more definite information as to how to proceed in the collection of same, if disapproved." The last letter written October 26, 1945 told plaintiff that the company had received no definite decision from the Maritime Commission, that they expected a decision within the next week "and will advise you accordingly." But the company never gave him any report whatever as to what had been done. It was not until plaintiff wrote to the Atlanta office of the Wage and Hour Division that he learned that representatives of the defendant company and of the Maritime Commission had refused to accept the favorable recommendation of the Wage and Hour Division on the claim.

Under these circumstances we cannot say that the trial judge was wrong in ruling that defendant was estopped to plead limitations. It has always been the rule that one cannot by words or conduct induce inaction on the part of a creditor and then when the creditor sues, attack his suit on the ground that it was filed too late. Nowhere is the rule more clearly stated than in a frequently quoted case in our own jurisdiction.

"We think it is a well-settled principle that *a defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him.* * * * Defendant must have done something that amounted to an affirmative inducement to plaintiffs to delay bringing action."[1] (Emphasis supplied.)

---

[1] Hornblower v. George Washington University, 31 App.D.C. 64, 14 Ann.Cas. 696; Howard University v. Cassell, 75 U.S.App.D.C. 75, 126 F.2d 6, relied on by appellee, is not in point. There the delay and inaction were on the part of

We think it clear that in the circumstances before us it was entirely reasonable for plaintiff to rely on the words and conduct of defendant and to file no suit while his claim was being considered by the defendant company, by the Wage and Hour Division, and by the Maritime Commission. It is clear that while this was going on he was affirmatively induced to take no action on his claim. It is of more than passing importance that despite its promise to do so the defendant company never notified him that his claim had been rejected.[2] He managed to get that information by his correspondence with the Wage and Hour Division. Four months after he got the information his suit was filed. We cannot hold that he was then too late.

### 2. Plaintiff's Status Under the Act.

 Defendant took the position that plaintiff was not entitled to overtime pay because he was an administrative employee and as such belonged in an excepted class covered by Section 13, 29 U.S.C.A. § 213, of the Act, to whom no overtime was payable. As to this contention the evidence was in conflict. Plaintiff described the nature of his work and testified that his duties were purely clerical. He explained his high salary by saying that defendant knew it had to pay him that much in order to obtain his services. Defendant attempted to show under Wage and Hour Regulations[3] that plaintiff's duties were of an administrative nature. The trial judge found that his duties were clerical; that while they perhaps required technical knowledge, his duties consisted principally of transcribing certain lists of piping materials and checking with other departments of the company as to procuring materials. The judge also found that plaintiff had no authority to exercise independent discretion or judgment and was bound by instructions from his superior. The memorandum filed in the case concluded: "While it may be that plaintiff from time to time acted in an advisory capacity in the sense that he made suggestions with respect to the availability of certain fittings and substitutions therefor, the Court finds that he exercised no supervisory authority." We cannot say that these rulings were erroneous. Whether an employee is within or without the exceptions set up by the Act is essentially a question of fact.[4] When an employer claims to be exempt from overtime pay-

---

plaintiff himself, with no evidence to show that defendant made any promise or did any act amounting to estoppel.

[2] In this connection see our recent decision in Cole v. Zellan, D.C.Mun.App., 55 A.2d 516, in which we dealt with a somewhat similar question. There a defendant had made a warranty against defects in connection with the sale of a house; a defect developed and defendant attempted over a long period to correct it. We ruled that the statute of limitations did not commence to run until the efforts to repair were terminated: that it was then that the ultimate breach took place.

[3] The section reads: "Section 541.2— Administrative. The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13 (a)(1) of the act shall mean any employee—

"(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment."

[4] Walling v. General Industries Co., 6 Cir., 155 F.2d 71, affirmed 330 U.S. 545, 67 S.Ct. 883; Fletcher v. Grinnell Bros., 6 Cir., 150 F.2d 337; Smith v. Porter, 8 Cir., 143 F.2d 292; Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514; Stanger v. Glenn L. Martin Co., D.C.D.Md., 56 F. Supp. 163.

ments because an employee is in an excepted class the employer has the burden of proving such fact by a clear preponderance of the evidence,[5] because the Act being remedial in nature its provisions together with the regulations promulgated thereunder must be liberally construed,[6] and claims of exemption must be strictly construed.[7] It has also been held that neither the title given an employee[8] nor the fact that his basic salary was over the $200 per month mark named in the regulations[9] is conclusive in determining his status with reference to exemptions. In view of the law as it has so many times been stated in the federal courts, and in view of the evidence shown in the record, we think the ruling of the trial judge on this point must be sustained.

3. *Was the Computation of Overtime Incorrect?*

■ Appellant says it was and relies upon Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, to support his position. Dealing with a situation in which the work hours fluctuated greatly from week to week, the Supreme Court held that overtime is to be computed on the basis of the regular rate of compensation and not upon the statutory minimum wage. The Court said that in the case of an employee working for varying numbers of hours per week for a fixed weekly wage this should be done: The regular rate is represented by the quotient obtained by dividing the weekly wage by the number of hours worked each week, even though such quotient should vary from week to week with the number of hours worked. Nothing, decided by the trial judge in this case is in conflict with the ruling in the Missel case. The accepted method for determining the rate of hourly

pay for employees paid on a monthly basis is to multiply the monthly salary by twelve to obtain the total pay for the year, then to divide that sum by fifty-two to obtain the pay per week; this sum in turn to be divided by the number of hours worked during the week. This method produces the "regular rate of pay" upon which overtime is to be computed under the Act.[10] In this case the variations in plaintiff's work-weeks were minor and occasional, so minor as not to have required or even justified the use of the special formula referred to in the Missel case. Moreover the parties stipulated in writing as to the total number of overtime hours worked during each separate period involved in this litigation. We rule that this phase of the case was decided correctly.

The Employee's Appeal

Plaintiff contends that the trial judge erroneously refused to allow him overtime pay for the period from April 26, 1943 to July 9, 1944, the period during which his pay was computed on an hourly instead of a monthly basis. In the memorandum filed in the case the trial court did not explicitly decide this question; but it is plain that overtime for this period was disallowed. After judgment plaintiff moved for specific findings to clarify the matter, but the motion was overruled. Whether we assume that the trial judge felt that plaintiff had been fully paid for all overtime worked during the period in question or that he had contracted away his rights when he signed the change of rate slip, the result is the same. Neither finding would be correct. The parties stipulated that during this period plaintiff worked overtime every week except five. (The exact number of hours is not material to our decision.) He would therefore be entitled under the Act to be

---

[5] Fletcher v. Grinnell Bros., supra; Smith v. Porter, supra; Ralph Knight, Inc., v. Mantel, supra; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Walling v. Newman, D.C.N.D.Iowa, W.D., 61 F.Supp. 971.

[6] United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Ralph Knight, Inc. v. Mantel, supra; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52.

[7] Smith v. Porter, supra; Ralph Knight, Inc., v. Mantel, supra; Walling v. Newman, supra.

[8] Stanger v. Glenn L. Martin Co., supra.

[9] Jewell Ridge Coal Corp. v. Local No. 6167 U.M.W.A., 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; Walling v. Newman, supra; Stanger v. Glenn L. Martin Co., supra.

[10] See Section 10, Interpretative Bulletin No. 4, Administrator, Wage and Hour Division, cited in the Missel case.

paid for such overtime, unless it were shown that there was a new and valid contract between the parties. There is no evidence that such was the case. The uncontradicted evidence was, as we have said, that plaintiff was asked to sign the slip for the convenience of the company's payroll department; that he was assured that the change was for no other purpose; that it would make no difference to him, and that he would continue to get the same amount of pay.

█ It has been held that such changes in methods of payment are valid if they are the result of fair and open negotiations between the parties and if the employee knows what he is doing.[11] But when a contract or arrangement produces an artificial "regular rate" the court will not sanction it. Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 14, 89 L.Ed. 29. There the Supreme Court said: "The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiations between employer and employee, provided that the statutory minimum is respected. *But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes.* Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate *for all hours actually worked in excess of 40*. Any other conclusion in this case would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act"[12] (Emphasis supplied.)

█ The employer argues that the change to the hourly basis was made in good faith and that this is established by the later change back to the monthly basis. We have no way of knowing whether these changes were made in complete good faith or not. But we are clear in our opinion

that whatever the motive, the effect was to circumvent rights of the plaintiff which the Act established and which the courts must protect. Even if we take the view most favorable to the employer, there was at best no real meeting of the minds as to what effect the new contract was to have on plaintiff's right to overtime. According to the uncontradicted evidence, overtime was not even discussed between the parties. Not on so uncertain an arrangement can an employee's rights under the Act be presumed away.[13]

We must therefore hold that it was error to disallow plaintiff's claim for the overtime involved during the period from April 26, 1943 to July 9, 1944. As to that claim the judgment will be reversed. If necessary, additional evidence may be taken in the trial court to determine the exact amount to which plaintiff is entitled for overtime worked during the period named. In that connection we invite the attention of the trial court to the recently decided case of Roland Electrical Co. v. Black et al., 4 Cir., 163 F.2d 417, 427, wherein it was held that in a suit under the Fair Labor Standards Act, the court is given discretion (under the Portal-to-Portal Act of May 14, 1947, 29 U.S.C.A. § 251 et seq.) as to the award of liquidated damages "if the employer shows to the satisfaction of the court that he was acting in good faith and had reasonable grounds to believe that he was not violating the statute."

In case No. 551, judgment affirmed.

In case No. 552, judgment reversed for further proceedings consistent with this opinion.

HOOD, Associate Judge (dissenting).

I am in accord with the majority in its decision on the employer's appeal, but do not agree with it on the employee's appeal. With respect to the latter appeal the majority opinion states that for the period in which the employee's pay was computed on an hourly basis he worked overtime and

---

[11] Walling v. General Industries Co., supra; Bergschneider v. Peabody Coal Co., 7 Cir., 142 F.2d 784; Shepler v. Crucible Fuel Co., 3 Cir., 140 F.2d 371.

[12] To the same effect see Walling v. Youngerman-Reynolds Hardwood Co., 325

U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Murray v. Noblesville Milling Co., 7 Cir., 131 F.2d 470.

[13] See Adams v. Union Dime Sav. Bank, 2 Cir., 144 F.2d 290.

"would therefore be entitled under the Act to be paid for such overtime, unless it were shown that there was a new and valid contract between the parties." This statement is not strictly accurate, for, under the trial court's finding that the employee was not exempt from coverage of the Act, the employee was entitled to be paid for overtime whether he was working under the new or old contract. What the majority really means is that if there was a new and valid contract for this period, then the employee has already been paid for his overtime work at the required rate of time and a half. I think the majority is in error when it says there was "no evidence" that there was a new and valid contract between the parties.

In April 1943 the employee had been working for the employer for approximately eight months at a monthly salary of $480. Although he usually worked forty-eight hours per week, no overtime pay was computed in his salary, because the employer considered him an administrative employee and exempt from the overtime pay provision of the Act. The employee at that time was also of the same opinion, for he made no claim to be entitled to overtime pay until late in the year 1944. Prior to April 26, 1943, the employer decided to change the employee's pay from a monthly basis to an hourly basis, and tendered the employee a "change of rate slip." This slip provided for a change from a rate of $480 per month to a rate of $2.14 per hour. The employee was told that the payroll department desired the change but it would make no difference to him as he would continue to get the same amount of pay. He protested against the change, saying it might affect his vacation, sick leave or seniority rights, but nevertheless he signed the slip. Thereafter, for the period in question, the employee was paid at the hourly rate with time and a half for overtime, and the net result was that he received as wages on an hourly basis, with overtime computed, approximately the same amount he had previously received on the monthly salary basis.

As I see the situation, the testimony presented a question of fact for the trial judge whether the tender and acceptance of the change of rate slip constituted a new and valid agreement between the parties or was a mere artifice designed for the purpose of computing the regular rate in an unrealistic manner for the purpose of evading the Act. I see nothing in the record which compels this court to hold the agreement invalid as a matter of law. The rate of $2.14 per hour was not plainly unrealistic. It was adopted in order that the regular rate plus overtime pay would give the employee the same amount he had theretofore received on a monthly basis. This was in accordance with the employer's promise that the employee would receive the same amount under the new agreement as under the old. At that time neither party considered that the employee was entitled to overtime pay for the previous period. There is no evidence of fraud or bad faith on the employer's part. The trial court, in view of all the circumstances of the case, was not compelled to accept the employee's apparent claim that he signed the agreement under duress.

This court accepts the trial court's finding of fact that the employee was within coverage of the Act. I think this court should also accept the trial court's finding of fact, not expressed but implicit in its general finding, that the change of rate slip constituted a new and valid agreement and that during its existence the employee was paid for overtime.[1]

[1] Cf. Walling v. Halliburton Oil Well Cementing Company, 331 U.S. 17, 67 S. Ct. 1056; Shepler v. Crucible Fuel Co., 3 Cir., 140 F.2d 371; Bergschneider v. Peabody Coal Co., 7 Cir., 142 F.2d 784; Walling v. General Industries Company, 6 Cir., 155 F.2d 711, affirmed 330 U.S. 545, 67 S.Ct. 883; Lassiter v. Guy F. Atkinson Co., 9 Cir., 162 F.2d 774.