JULIO PIÑÁN, Plaintiff and Appellee, *v*. MAYAGÜEZ SUGAR CO., INC., Defendant and Appellant.

No. 69. Decided December 6, 1961.

*Amador Ramírez Silva, Tomás I. Nido,* and *Gabriel Guerra Mon-dragón* for appellant. *Lorenzo Piñeiro Rivera* and *Juan Mari Bras* for appellee. *Fiddler, González, Guillemard & Rodríguez* (*E. Negrón Rodríguez* on the brief) for the Sugar Producers' Association of Puerto Rico, as amici curiae.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 10, 1958 Julio Piñán filed a complaint against the Mayagüez Sugar Co. in a claim for extra hours worked within the period comprised from the beginning of the 1950 grinding season and the end of the 1957 grinding season. Pursuant to the findings of fact of the trial court, petitioner rendered services during the grinding season for not less than twenty weeks including Sundays during the years 1950 to 1953, both inclusive. He worked all year during 1954 and 1955, but during the dead season, although he earned the same weekly salary, he only worked a forty-hour workweek. In 1956 he only worked one week and on the following year he returned during the grinding season and worked not less than seventeen weeks.

A petition for review was filed against the judgment granting the complaint. It is alleged that the trial court committed error in not granting the pleas of prescription of the action and lack of cause of action which were timely set forth in the answer.

■ 1— The complaint in this case was filed on January 10, 1958, more than a year after the effectiveness of the Minimum Wage Act of 1956 (Act No. 96 of June 26, 1956, 29 L.P.R.A. Supp. § 245 *et seq.*). Therefore, the prescription of the action is governed by this new provision [1] and not by § 1867 of the Civil Code (31 L.P.R.A. § 5297). *Agostini* v. *Superior Court*, 82 P.R.R. 213, 224 (1961).

■■ Since Piñán rendered services to respondent until 1957, the period of three years referred to in § 32(*a*) of the Minimum Wage Act of 1956 and which is counted "from the date the employee ceased in his employment with the employer," had not elapsed on the day the action was filed. Even though it could be argued that during 1954 and 1955 there was a substantial change in the nature of the services rendered by the worker because he also worked during the dead season with the same employer, this fact would not defeat the claim since the effect of § 32(*d*) of the above mentioned Act was to change the doctrine prevailing at that time and stated in *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660 (1945) and *Vicenty* v. *Corona Brewing Corporation*, 73 P.R.R. 131 (1952) upon expressly providing that change in the nature of the services rendered by the workman did not constitute a novation. And as to the contention that the prescriptive period starts at the termination of each grinding season, we rejected an identical contention in *Rodríguez* v. *Eastern Sugar Associates*, 82 P.R.R. 563 (1961). Although it is true that there was an inexplicable absence in

---

[1] Section 32(e) of the above-mentioned Act (29 L.P.R.A. § 246d(*e*)) reads "The provisions of this section shall in no wise affect the cases already filed in court or that may be filed within one (1) year after this act takes effect."

1956 during which grinding season petitioner worked for only a week, when the claim was filed in January 1958, three years had not yet elapsed since the termination of the 1955 grinding season. In other words, assuming that this absence did affect the continuity of the services rendered, anyway the complaint was timely filed.

2— The defense of lack of cause of action is based on the contention that petitioner Piñán was an executive during the period covered by the claim, and as a result, he is precluded from making claims for work performed in excess of forty hours a week. For the purposes of disposing of this contention it is convenient to previously establish the scope and limitations imposed by law with respect to the right of an executive employee to claim extra hours.

At its initial stage, legislation concerning the workweek and employment conditions did not establish any distinction as to its application to executive employees. In absence of an express exclusion by law, we have interpreted that they are included within the "workmen," "laborers" or "employees" who are beneficiaries of labor law. As to minimum wages, see: *Sierra* v. *Long Construction Co.*, 76 P.R.R. 391 (1954); *De Arteaga* v. *Club Deportivo*, 73 P.R.R. 407, 411–412 (1952) and *Tulier* v. *Land Authority*, 70 P.R.R. 249, 252–255 (1949); workweek: *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250 (1948); day of rest: *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77, 85–86 (1951); special proceeding for claim of wages: *Doyle* v. *Polypane Packaging Co.*, 80 P.R.R. 218, 223–225 (1958); discharge without just cause: *Hull Dobbs Co.* v. *Superior Court; Marín, Int.*, 82 P.R.R. 73, 81 (1961).

Act No. 379 of May 15, 1948 (Sess. Laws, p. 1254) for the first time excludes executives from the provisions on regular and extra hours of work. After said date, executives— a term not expressly defined—would not be able to receive or claim compensation for extra hours except (a) under the

provisions of some mandatory decree promulgated before the effectiveness of Act No. 379 which remained in full force by virtue of § 22 thereof; or (b) as compensation for hours worked during a rest period under the provisions of Act No. 289 of April 9, 1946 (Sess. Laws, p. 682). *Sierra* v. *Long Construction Co.*, 76 P.R.R. 391 (1954); *Caguas Bus Line* v. *Comm'r of Labor*, 73 P.R.R. 690 (1952); *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77 (1951); *Rodríguez* v. *Fonalledas*, 72 P.R.R. 49 (1951).

Act No. 130 of April 27, 1950 (Sess. Laws, p. 336), amended § 5 of Act No. 289 of 1946, *supra*, excluding "professionals, executives and administrators" from the benefits of a day of rest given to employees. And Act No. 131 of April 27, 1950 (Sess. Laws, p. 336) amended the definition of "workman," "employee" or "laborer" of the Minimum Wage Act to likewise exclude professionals, executives and administrators.[2] The Minimum Wage Board was expressly authorized to define said terms.

By a regulation which took effect on January 15, 1952, the Secretary of Labor adopted a definition of the term "executive" for the purpose of the exception established in § 19 of Act No. 379 of May 15, 1948, *supra*, identical to that contained in Regulation No. 13 approved August 8, 1951 by the Minimum Wage Board.[3] In both the term executive is defined as follows:

---

[2] Act No. 96 of June 26, 1956 (Sess. Laws, p. 622) which substituted the original act on minimum wages, contained identical definitions.

[3] This Regulation was revised on December 17, 1959 to be effective on the following January 15. The only change as to the requirements to qualify as executive, contained in this new revision is in paragraph (6) of subdivision (A), which now provides: "(6) who is compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to the weekly salary which results from multiplying by sixty (60) the highest minimum rate per hour applicable by a law of the Commonwealth of Puerto Rico or by a mandatory decree of the Minimum Wage Board of Puerto Rico to the activities in connection with which he performs his duties as an executive, exclusive of board, lodging, or other facilities; *provided*, however, that the weekly salary shall never be less

"(A) Any employee (1) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof; **and**

"(2) who customarily and regularly directs the work of two or more other employees therein; or of a department or subdivision thereof; and

"(3) who has the authority to hire of fire other employees or whose suggestions and recommendations as to the hiring **and** firing and as to the advancement and promotion or any other change of status of other employees will be given special attention; and

"(4) who customarily and regularly exercises discretionary powers; and

"(5) who does not devote over 20% of his workweek to activities not directly or intimately related to the performance of·the work described in paragraph (A), Subsections (1) to (4) of this Article; *Provided,* that this Subsection (5) shall not apply in the case of an employee who is in the sole charge of an independent establishment or a physically separated branch establishment; or when he owns at least a 20% interest of the enterprise he works for; and

"(6) who is compensated for his services on a fixed basis (by day, week, fortnightly or longer periods) equivalent to a weekly salary of not less than $30 exclusive of board, lodging, or other facilities; or

"(B) Any employee (1) whose work complies with the requirements of Paragraph (A), Subsections (1) and (2) of this Article; and

"(2) who is compensated for his services on a fixed basis by day, week, fortnightly, or longer periods) equivalent to a weekly salary of not less than $100, exclusive of board, lodging, or other facilities."

We now consider the application of the law set forth to the facts in the instant case which cover a claim for work rendered from 1950 to 1957. It is admitted that petitioner Piñán worked during the period covered in the complaint, a total amount of 56 hours a week, that is, eight hours daily

---

than thirty-five dollars ($35.00) when said compensation computed in the manner already mentioned would result in less than this amount." The validity of the definition of "executive" in Regulation No. 13 was upheld in *Sierra* v. *Mario Mercado e Hijos,* 81 P.R.R. 305, 312–314 (1959).

during the seven days of the week. This being so, he is entitled to recover up to April 27, 1950—date of the effectiveness of Acts Nos. 130 and 131—at double rate for the hours worked during the day of rest and at the regular rate for hours worked in excess of 40 hours a week. *Cf. Sierra v. Mario Mercado e Hijos*, 81 P.R.R. 305 (1959). From and after this date, his right to compensation depends on whether he actually was an executive or not, for which determination we must consider, after January 15, 1952, the requirements established by the above-mentioned regulation promulgated by the Secretary of Labor, and for the period comprised between April 27, 1950 and January 15, 1952, in the absence of administrative expression on the matter, we shall consider all the material facts of the case as found proved by the trial court.

Thus, it is fitting to copy the findings of fact set forth by the trial court as to the nature of the duties performed by petitioner in respondent's sugar central since his weekly salary was never less than thirty dollars:

"2d. Petitioner was one of three employees at respondent's central, arbitrarily called overseer or timekeeper, who took turns in shifts of eight hours daily, each one supervising in each shift, not less than 30 employees or workmen of the central. Petitioner's work, as well as that of the other overseers or timekeepers consisted in preparing the lists of the workmen corresponding to each shift and keeping a daily record of the hours worked by each one. This phase of the work took a considerable time of his daily routine. The rest of his responsibilities consisted in seeing that the workmen in his shift were duly doing their work. Petitioner should immediately report any irregularity either in the performance of some duty or in any other matter under his responsibility, to the offices of administration of the central. *Petitioner did not hire workmen nor have authority to dismiss them.* This notwithstanding, when one of the workmen on duty in his shift was absent, he chose the substitute; when a workman did not perform his duty, he complained to the administration and as a rule his recommendation was heard. On the other hand, there is nothing in the evidence which shows

that the duties of the petitioner as overseer or timekeeper were identified as comprising in themselves an acknowledged department or subdivision of the respondent enterprise." (Italics ours.)

 In view of these facts we do not believe that it may be held that petitioner was an executive employee. This is especially true when it is considered that in general terms, his duties did not require any exercise of discretion, that his principal duty was rather of a routinary or clerical nature. As a matter of fact, his supervision and control over other employees was practically none. It was not shown that Piñán ordered the performance of any task; he did not hire or dismiss workmen. Under similar circumstances we have decided that a "timekeeper" is not an executive, *Sierra* v. *Mario Mercado e Hijos*, 81 P.R.R. 305, 307 (timekeeper of agricultural work) ; *Tulier* v. *Land Authority*, 70 P.R.R. 249 (1949) ; cf. *Correa* v. *Mario Mercado e Hijos*, 72 P.R.R. 77 (1951) ; *De Arteaga* v. *Club Deportivo*, 73 P.R.R. 407 (1952). We must bear in mind as to the definition of "executive" of the above-mentioned regulation that there must necessarily exist all the requirements mentioned therein. Furthermore, the exclusion of an employee from the benefits of labor law because he is an executive must be clear. It should be strictly construed. *Ralph Knight* v. *Mantel*, 135 F.2d 514 (C.C.A. 8, 1943) ; *Bernick* v. *Coddon*, 65 F. Supp. 89 (Minn. 1946) ; *Anderson* v. *Federal Cartridge Corporation*, 62 F. Supp. 775, 779 (Minn. 1945).

This being so, the respondent court did not err in deciding that petitioner was not an executive. We have passed over the computations made in order to render judgment and they are in conformity with the standards laid down in *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468, 476 *et seq.* (1959).

The judgment rendered by the Superior Court, Mayagüez Part, on October 30, 1958, will be affirmed.