1022

BUCKNER v. ARMOUR & CO.

Civil Action No. 294.

District Court, N. D. Texas,
Fort Worth Division.

July 22, 1942.

Tommy Forbis and Dee Estes, both of Fort Worth, Tex., for plaintiff.

Cantey, Hanger, McMahon, McKnight & Johnson, of Fort Worth, Tex., for defendant.

JAMES CLIFTON WILSON, District Judge.

This is a wage and hour case arising under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. It calls for a look at defendant's general packing business at Fort Worth, Texas; more particularly to the general fire department it maintains, and which it claims is primarily to reduce its insurance. It actually serves, however, to some extent to lessen its fire hazards and to fight occasional fires. As to the most serious fires, it relies on the fire fighting organization and equipment of the City. The plaintiff, from the effective date of the Act in October, 1938, to April 23, 1941, when he resigned as an employee of defendant, was engaged in the defendant's fire fighting department, performing the usual and ordinary duties of a day fireman. He was Assistant Fire Chief during the years in question, but functioned as such only during the absence of the regular Chief. The question is raised by defendant that he was not in commerce, or engaged in the production of goods for commerce, as defined, or doing work necessary to the production of goods for commerce. Without going into those questions, for purposes of decision here, for the present, I am going to assume that he was, and at all times came, under the Wage and Hour provisions of the Act.

Plaintiff also had his allotted nights out of each week for staying at the fire hall, subject to emergency calls to make adjustments or repairs to the fire fighting equipment, and to fight fires if any broke out. Such emergency calls, considering the number and nature of them, the number of different men during the run of a week likewise on night duty subject to such calls, when reduced to a work picture, as applied to any one of these night men, is very insubstantial, really trivial you might say. For instance, the Fire Chief, Mr. Watts, whom I accept as a credible witness, testified the calls to fight fires were not more than two or three a year. (Tr. p. 54) The other calls were mainly to adjust the sprinkler system, the water pressure or leaks in the mains, pipes, etc., the need for which was automatically reflected through a smart electrical mechanical system down at a

central station in the City, called the A.D.T. I think this was maintained by some kind of an insurance protective association. From there it was 'phoned out to these night men.

Swift & Company has a similar plant near defendant's, and has a similar protection and fire fighting system and arrangement, likewise connected with A.D.T. Either, first having a call from A.D.T. responds, whether to fight fires, or make adjustments, of their own, or at the other's plant. Through such a mutual interest in keeping down fires and keeping up adequate equipment this practice has been followed for years. During a four year period, embracing the time here in question, their combined calls for both day and night were only 235. Dividing those calls equally between the two companies, and dividing that result equally between day and night, and reducing that from four years to one, we have approximately 16 of such night calls a year for all of the men that take a turn at such night duty. It took an average of eight or ten minutes to make needed adjustments or repairs. The record indicates it took an average of five minutes to get to such places to make them. Allow twenty minutes for each, this would make about five hours per year spent by the entire group on such night calls. There are other ways from which the approximate time spent by plaintiff may be arrived at. None of them show the work actually done to be anything more than a trifle. When not called out these men spent their time playing dominoes, pool, or sleeping. This tends to confirm the position taken by defendant that this system is maintained to reduce fire insurance, its utility being incidental. The evidence did show that it reduced the yearly premium in a most substantial sum.

This night time spent by plaintiff constitutes the basis of his claim for overtime. The defendant, though doubtful as to applicability of the law, worked plaintiff on day work not in excess of the maximum hours of 44, 42 and 40 hours per week as the law provided for the particular years involved. For this regular day work, plaintiff was paid $29 per week. This was more than the minimum wage provided for the different years. The most plaintiff sues for is $17,619.96, with attorney's fees added, on account of his night work. On an alternative plea he prays for $6,600 and attorney's fees.

Defendant presents the defense, which goes to plaintiff's whole case, that the night hours spent by the plaintiff in the fire hall, subject to call as above explained, are not work as contemplated by the Act. I passed on this identical question on July 20, 1942, in the case of Skidmore et al. v. Swift & Co., 53 F.Supp. 1020, and I refer to that opinion. I held it could not be treated as work hours. I was influenced by the interpretation of the Administrator of this law. It strikes me as being based in the best of reasons. Furthermore, I could hardly conceive of Congress intending such injustices, potentially disastrous, that would obviously flow, if such was to be the effect of the Act. Plaintiff does not attempt to point us to any particular phraseology that would indicate any such intent. Such a construction would make this wholesome law a common instrument of injustice in the hands of men willing to repudiate their contracts and to take any underhold in order to get something for nothing. Here is the Administrator's view about it: "In some cases employees are engaged in active work for part of the day but because of the nature of the job are also required to be on call for 24 hours a day. Thus, for example, a pumper of a stripper well often resides on the premises of his employer. The pumper engages in oiling the pump each day and doing any other necessary work around the well. In the event that pump stops (at any time during the day or night) the pumper must start it up again. Similarly, caretakers, custodians, or watchmen of lumber camps during the off season when the camp is closed, live on the premises of the employer, have a regular routine of duty but are subject to call at any time in the event of an emergency. The fact that the employee makes his home at his employer's place of business in these cases does not mean that the employee is necessarily working 24 hours a day. In the ordinary course of events the employee has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits. In some cases the employee may be free to come and go during certain periods. Thus, here again the facts may justify the conclusion that the employee is not working at all times during which he is subject to call in the event of an emergency, and a reasonable computation of working hours in the situation will be accepted by the Division." Interpreta-

tive Bulletin No. 13, Paragraph 7, 2 Labor Law Service, page 32, 402, Paragraph 32, 113.

I also cited the following authorities in support of my holding: Cordell v. H. F. Wilcox Oil & Gas Co.,[1] D.C.N.D.Okl.; Carlton v. London Mines & Milling Company, Colo. Dist. Ct., 4 Labor Cases Paragraph 60, 699; Muldowney v. Seaburg Elevator Company, Inc., D.C., 39 F.Supp. 275.

■ Another defense, which goes to plaintiff's whole case, I think is good; which is that plaintiff at all times he acted as Assistant Fire Chief was serving in an executive or administrative capacity and was exempt under Sec. 213 of the Act. The evidence here conclusively shows that such service of plaintiff met all the specifications of an executive, exercising discretion, hiring and discharging men, directing their work, etc., as defined by the Administrator in Title 29, Chap. V, Code of Federal Reg-

ulations, Part 541, October 1940, except as to the item of salary he fixed in subsec. E. That part is attacked by defendant as being invalid. That regulation was held to be invalid in Devoe v. Atlanta Paper Company, D.C., 40 F.Supp. 284. I agree with the conclusion reached in that case. Only Congress had the arbitrary power to make the exception that an executive who received a salary less than $30 per week should not be exempt. It declared that all serving in executive and administrative capacities were exempt. Such a holding by the Administrator was purely an attempted law making function, while the power delegated to him was only to define those terms.

Many other questions and defenses are raised, which I do not deem necessary to discuss.

For the reasons stated, judgment will be for the defendant, and may be drawn accordingly.

---

[1] No opinion for publication.