WALLING, Administrator of Wage and Hour
Division, U. S. Dept. of Labor, v.
YEAKLEY et al.

No. 2772.

Circuit Court of Appeals, Tenth Circuit.

Jan. 4, 1944.

Peter Seitz, Atty., U. S. Dept. of Labor, of Washington, D. C. (Douglas B. Maggs, Sol. and Bessie Margolin, Asst. Sol., both of Washington, D. C., Reid Williams, Regional Atty., of Denver, Colo., Morton Liftin, H. Michele Olsson, and Flora G. Chudson, Attys., U. S. Dept. of Labor, all of Washington, D. C., on the brief), for appellant.

Merle M. Marshall, of Alamosa, Colo., for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Walling, as Administrator of the Wage and Hour Division, United States Department of Labor, brought this action against N. O. Yeakley and J. B. Yeakley seeking an injunction to restrain them from violating §§ 15(a) (1), (2), and (5) of the Fair Labor Standards Act of 1938,[1] 52 Stat. 1060, 29 U.S.C.A. § 215(a) (1, 2, 5).

The decree below enjoined violation generally, but excluded therefrom the book-keeper-office manager and the head miller. Walling, as Administrator, has appealed from that portion of the decree denying an injunction with respect to the bookkeeper-office manager and the head miller.

Section 13 of the Act, 29 U.S.C.A. § 213, in part, provides:

"The provisions of sections 6 and 7 shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator); * * *."

By regulation the Administrator has defined and delimited the terms bona fide executive, administrative, and professional capacity. The regulations, in part, read:

"Executive. The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee * * *

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), * * *" (29 U.S.C.A. Appendix § 541.1.)

"Administrative. The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(a) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities) * * *." (29 U.S.C.A. Appendix, § 541.2.)

"Professional. The term 'employee employed in a bona fide * * * professional * * * capacity' in section 13(a) (1) of the Act shall mean any employee who is * * *

"(b) compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities): Provided, That this paragraph shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof." 29 U.S.C.A. Appendix § 541.3.

The salary paid the bookkeeper-office manager by the Yeakleys has never equaled $30 per week. The salary paid the head miller by the Yeakleys has never equaled $200 per month.

The trial court held that the salary requirements of the regulations were arbitrary and unreasonable, and that the book-keeper-office manager was exempt as an executive employee, and the head miller as a professional employee.

Congress exempted employees employed in bona fide executive, administrative, or professional capacities. It realized, however, that the phrases "bona fide executive capacity," "bona fide administrative capacity," and "bona fide professional capacity" would not fix absolute standards or a definite classification within or without which particular employees would fall, and that it was desirable that such phrases be defined and delimited. Congress did not undertake itself to define and delimit such phrases, but delegated that duty to the Administrator. It did not direct that criteria should be laid down as an aid in determining what employees fell within or without the exempted employments, but that the phrases should be made certain by specific definition and delimitation. "Define" means "to state explicitly; to limit; to determine the essential qualities of; to determine the precise signification of; to set forth the meaning or meanings of." "Delimit" means "to fix or mark the limits of; to demarcate; bound."[2] Congress chose general phrases to describe the exempted classes of employees and delegated to the Administrator the power and duty, by regulation, to define and delimit those classifications by reasonable and rational specific

---

[1] Hereinafter called the Act.

[2] Webster's International Dictionary, 2d Ed. Unabridged, pp. 688, 692.

criteria. Necessarily, if the classifications are limited by specific definition and delimitation, some employees who might fall within the general meaning of the phrases employed by Congress will be excluded. Exclusion usually results when we descend from the general to the particular, and Congress must have realized that specific definition and delimitation which would result in certainty of application would of necessity exclude some employees who might otherwise be regarded as within the general phrases used by Congress. Nevertheless, Congress did not see fit to leave embraced within the exempted employments every employee who might fall within the general meaning of the phrases employed, but directed the Administrator to specifically define and delimit such phrases. Congress thereby manifest a policy of having specific criteria laid down by the Administrator by which employer and enforcement agency could determine with certainty whether an employee fell within or without one of the exempted employments. It was important that the employer and the employee know, when the Act became effective, whether the employee was exempted or excluded by exemption from the provisions of the Act. Congress obviously believed that it was better to have the exempted employments defined with precision and certainty, even though some persons, who might otherwise be regarded as falling within the general terms employed, should thereby be excluded.

■ We accordingly conclude that if the regulations are valid, they must be regarded not as setting up criteria which should be given consideration in determining whether an employee falls within the exempted employments, but as defining and delimiting such phrases and as setting down absolute criteria through which the question of exemption must be determined.

■ The question then presented is, whether the regulations, so construed, are valid. That depends upon whether the power exercised by the Administrator in promulgating the regulations was lawfully delegated and lawfully exercised. We think there can be no question that the power was lawfully delegated. Congress, in effect, provided that employees should be exempt who fell within certain general classi-

fications as rationally and reasonably defined and made certain by the Administrator. The general standard was laid down by Congress,—bona fide executive, administrative, or professional capacity. The policy was made manifest by Congress,—that of precise definition and delimitation by a reasonable and rational regulation defining and delimiting the general terms. The delegation of such a power to define and delimit has been sustained by the decisions of the Supreme Court.[3] Congress has laid down a general standard and manifest a policy and within the framework thereof has delegated to the Administrator the duty to supply the details. So to do is well within the principle of permissible delegation.[4]

The question remaining is whether the standards or criteria laid down by the Administrator are ones which a rational person could have made or are unreasonable and arbitrary. In Gray v. Powell, 314 U. S. 402, 413, 62 S.Ct. 326, 333, 86 L.Ed. 301, the court said:

"Unless we can say that a set of circumstances deemed by the Commission to bring them within the concept 'producer' is so unrelated to the tasks entrusted by Congress to the Commission as in effect to deny a sensible exercise of judgment, it is the Court's duty to leave the Commission's judgment undisturbed."

In Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 233, 63 S. Ct. 589, 598, the court said:

"It is enough that the Administrator has acted within the statutory bounds of his authority, and that his choice among possible alternative standards adapted to the statutory end is one which a rational person could have made."

■ Obviously, the most pertinent test for determining whether one is a bona fide executive is the duties which he performs. Admittedly, a person might be a bona fide executive in the general acceptation of the phrase, regardless of the amount of salary which he receives. On the other hand, it is generally true that those in executive positions assume more responsibility and are generally higher paid than those who work under the supervision and direction of others. The same is true with respect to those employed in administrative and profession-

---

[3] Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 232, 63 S.Ct. 589; Gray v. Powell, 314 U.S. 402, 413, 62 S.Ct. 326, 86 L.Ed. 301.

[4] Currin v. Wallace, 306 U.S. 1, 15–18, 59 S.Ct. 379, 83 L.Ed. 441; Henderson v. Kimmel, D.C.Kan., 47 F.Supp. 635, 642, 643; Kansas Gas & Electric Co. v. City of Independence, Kan., 10 Cir., 79 F.2d 32, 42, 43, 100 A.L.R. 1479.

al capacities. Therefore, in most cases, salary is a pertinent criterion and we cannot say that it is irrational or unreasonable to include it in the definition and delimitation.[5]

The judgment below will be modified so as to include therein the bookkeeper-office manager and the head miller and, as modified, affirmed.

[5] Walling v. Sun Pub. Co., D.C.Tenn., 47 F.Supp. 180, 191; Mantel v. Ralph Knight, Inc., D.C.Mo., 45 F.Supp. 372; Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, 517.

Contra: Devoe v. Atlanta Paper Co., D.C.Ga., 40 F.Supp. 284; Tune v. Roselawn Florists, 4 Wage Hour Rept 596; Buekner v. Armour and Co., 53 F Supp. 1022.